# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TYLER WEBER, TRACY SARNO, JANET YELDING, and JANAYE KEARNS, <br><br> Plaintiffs, <br><br> v. <br><br> DIAMOND RANCH ACADEMY, a Utah Corporation, and Does I through X, <br><br> Defendants. | MEMORANDUM DECISION <br><br> Case No. 2:14-cv-00884-DBP <br><br> Magistrate Judge Dustin B. Pead |

## BACKGROUND

The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. 8.) Plaintiffs Tyler Weber, Tracy Sarno, Janet Yelding, and Janaye Kearns ("Plaintiffs") allege that they were injured by Defendant Diamond Ranch Academy ("DRA"), which held itself out as a therapeutic treatment center but failed to provide the treatment it offered. Presently before the Court is DRA's motion to dismiss. (Dkt. 2.)

## ANALYSIS

DRA asserts that the Court is without subject-matter jurisdiction to hear this case because DRA is a health care provider as defined by the Utah Health Care Malpractice Act ("UHCMA") and Plaintiffs failed to comply with the pre-litigation requirements of UHCMA. (Dkt. 2.) In support of its claimed status as a health care provider, DRA provided a copy of a license from the Utah Department of Health and Human Services indicating that DRA is licensed to provide

"RESIDENTIAL TREATMENT" for minors ages twelve to eighteen. (Dkt. 13, Ex. 1.) DRA notes that under the Utah Administrative Code, it was required to retain medical personnel on staff. *See* Utah Admin. Code r.501-19-5. The Administrative Code also states that residential treatment programs are permitted to provide "specialized treatment, rehabilitation or habilitation services for persons with emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies." Utah Admin. Code r.501-19-2. DRA alternatively argues that even if the Court has subject matter jurisdiction, the causes of action are insufficiently pled.

Plaintiffs argue that DRA is not a health care provider because it represented itself as a school rather than a psychiatric hospital. (Dkt. 9.) They urge that DRA's license is insufficient to establish that DRA is a health care provider under UHCMA as interpreted by *Platts v. Parents Helping Parents*, 947 P.2d 658 (Utah 1997). Plaintiffs also argue that their injuries do not arise from the provision of health care. Additionally, they argue that this case is not subject to UHCMA because no expert testimony is required to establish causation. During the May 13 hearing, Plaintiff's counsel clarified that Plaintiffs believe DRA is not a health care provider because the services DRA provided were so deficient they could not be considered health care. Plaintiffs also argued that DRA could not be a health care provider because they unlawfully restricted the minor Plaintiffs' movements and communications. Finally, Plaintiffs argue that their Complaint meets the minimal standards or Rule 8.

## I. **The Court lacks subject-matter jurisdiction because Plaintiffs have not complied with UHCMA.**

Two issues control whether the Court has subject-matter jurisdiction: (1) whether DRA is a "health care provider" under UHCMA and (2) whether the alleged injuries arise from the provision of health care. If the Court answers both questions affirmatively, Plaintiffs must

complete pre-litigation notice and review requirements prior to filing suit. *See* Utah Code Ann. § 78B-3-412. Plaintiffs do not indicate they have attempted to comply with those requirements.

### a. DRA is a health care provider.

Under *Platts*, a defendant asserting that it is a "health care provider" must demonstrate that it provided care and services similar to those performed by health care providers enumerated in UHCMA. *Platts*, 947 P.2d at 663. "This requires a factual determination by the trial court as to the care and services rendered by [DRA], as well as to the care and services rendered by the listed providers to which [DRA] claims similarity." *Id.* Here, the factual record before the Court includes only Plaintiffs' Complaint and the copy of DRA's license.[1]

While DRA does not specify the enumerated health care provider to which they claim similarity, Plaintiffs' Complaint alleges that DRA offered or provided services similar to a psychologist. A psychologist engages "in the practice of psychology as defined in Section 58-61-102." Utah Code Ann. § 78B-3-403(31). The practice of psychology includes "mental health therapy . . . counseling . . . behavior analysis and therapy . . . ." Utah Code Ann. § 58-61-102(9). The practice of psychology also includes "diagnosis and treatment of . . . alcoholism and substance abuse . . ." *Id.*

Plaintiffs argue that they believed DRA was not a health care provider, but instead a school, a camp, or a ranch; however, their Complaint undermines this argument. In their Complaint, Plaintiffs' allege that DRA "is a Utah licensed residential treatment center . . . ." (Compl. ¶ 10.) Plaintiffs further allege that they expected from DRA "regular and productive therapy/counseling and an emphasis on education and 'getting back on the right track' for a healthy, drug-free, happy, successful future." (Compl. ¶ 1.) Plaintiffs allege that DRA offered

---

[1] The Court may consider evidence to resolve a motion under Rule 12(b)(1). *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). The Court takes judicial notice of DRA's license.

"therapy and assistance to help Tyler and Janaye navigate back to a productive life . . . with professional counseling on a regular basis to help them renew and recenter their lives." (Compl. ¶¶ 3, 27.) The Complaint further alleges DRA "fail[ed] to provide the highest attainable standards of health and facilities for [minor Plaintiffs'] treatment and rehabilitation." (Compl. ¶ 36.h.) Plaintiffs also allege that DRA "fail[ed] to take appropriate measures to promote their physical and psychological recovery and social re-integration." (*Id.* ¶ 36.t.) Thus, by Plaintiffs' own account, which must be treated as true for purposes of this motion, DRA operated as a residential treatment facility offering and providing services similar to the UHCMA-enumerated category of psychologist.

   1. *This case is subject to UHCMA irrespective of any need for expert testimony.*

Plaintiffs claim that this case is not governed by UHCMA because, unlike many medical malpractice cases, Plaintiffs do not need expert testimony to prove their prima facie case. Plaintiff cites several cases in which Plaintiffs attempted to establish medical malpractice without expert testimony to establish a standard of care. *E.g. Bowman v. Kalm*, 179 P.3d 754 (Utah 2008) (common knowledge exception); *Dalley v. Utah Valley Regional Med. Ctr.*, 791 P.2d 193 (Utah 1990) (res ipsa loquitur). Yet, Plaintiffs do not identify anything in these cases or UHCMA that excuses such cases from UHCMA's requirements. Even though these cases did not require an expert to prove causation, the cases nonetheless refer to themselves as medical malpractice matters. *See, e.g.*, *Bowman* at 757. Based on the foregoing, Plaintiffs' Complaint indicates that DRA acted as a health care provider.

   2. *The purported regulatory violations do not prevent DRA from being classified as a health care provider.*

Plaintiffs also claimed during oral argument that they were in a lockdown facility and had their communication with the outside world unduly restricted. This appears to be a reference to

their briefing regarding the "Patients' Rights" found in the Utah Administrative Code. *See* Utah Admin. Code r.432-101-15. Unfortunately for Plaintiffs, they do not connect the alleged violation of their rights as patients to some legal principle that could thus prevent DRA from being classified as a health care provider. Indeed, the Patients' Rights to which Plaintiffs cite apply to health care providers. *See* Utah Admin. Code r.432-101-2 ("This rule applies to a hospital . . ."); Utah Code Ann. § 78B-3-403(12) ("'Health care provider' includes . . . a hospital . . . ."). Likewise, confinement is not contrary to UHCMA's purpose. The very definition of health care under UHCMA contemplates confinement. Utah Code Ann. § 78B-3-403(10) (including in the definition of "health care," acts performed "during the patient's medical care, treatment, or confinement.").Thus, any argument that DRA violated the Patients' Rights does not militate against finding DRA to be a health care provider under UHCMA.

## II. <u>Plaintiffs' causes of action relate to or arise from the provision of health care rendered by DRA.</u>

Plaintiffs contend that their claims are "nonmedical torts" and thus are exempt from UHCMA's requirements. UHCMA applies to "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider." Utah Code Ann. 78B-3-403(17).

Again, Plaintiffs' Complaint demonstrates that the alleged injuries arise from healthcare DRA provided, or should have provided. Plaintiffs allege they expected "medical care, and positive, professional therapy/counseling." (Compl. ¶ 45.) Plaintiffs allege that they were harmed by the quality or value of the services provided by DRA. (*E.g. id.* ¶¶ 36.h & 36.t.) Plaintiffs attempt to avoid application of UHCMA by alleging that DRA did not provide a number of expected services. At oral argument Plaintiffs argued that treatment can become so deficient that

it ceases to qualify as health care. Plaintiffs could not offer any legal basis for this suggestion.

Moreover, UHCMA does not support this argument. Even a lack of treatment can form the basis of a malpractice action. "'Health care' means any act or treatment performed or furnished, *or which should have been performed or furnished*, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Utah Code Ann. § 78B-3-403(10) (emphasis added). Plaintiffs were not able to offer any basis on which they sought to recover from DRA that did not contemplate the provision (or lack of provision) of health care. Put simply, UHCMA applies, by its explicit terms, to a situation in which a health care provider does not render the quantum or quality of care expected.

Though not raised in the parties' briefing, the Court is cognizant that certain claims against a health care provider are not subject to UHCMA. *See Dowling v. Bullen*, 94 P.3d 915, 917–18 (Utah 2004) (holding that a wife's alienation of affection claim against her husband's therapist did not arise out of the provision of health care because the plaintiff wife was not the patient receiving health care). *Dowling* does not appear to change the outcome here because Plaintiffs are clients of DRA. In short, there does not appear to be any claim that is sufficiently unrelated to the treatment expected or provided.

### a. Plaintiff's fraud-related claims.

Plaintiffs attempt to distinguish their fraud-related claims by arguing that DRA should be "estopped"[2] from asserting defenses under UHCMA. (Dkt. 9 at 10.) Once again, Plaintiffs' Complaint shows that their fraud claims arise from the provision of health care. Breach of warranty claims are expressly included in UHCMA's description of the causes of action to which

---

[2] The reference to estoppel is problematic. Unlike an affirmative defense like statute of limitations, which may be limited by equitable considerations, the question raised here goes to the Court's subject-matter jurisdiction. Regardless of DRA's conduct, the Court does not have the power to hear a case in which it has no subject-matter jurisdiction.

it applies. *See* Utah Code Ann. § 78B-3-403 (17). The fraud claims here are similar to a breach of warranty claim. As discussed above, Plaintiffs allege that DRA told them it would provide "medical care, and positive, professional therapy/counseling." (Compl. ¶ 45.) Plaintiffs further allege that they detrimentally relied on these representations, and as a result "did not receive the *quality* care, services, and facilities paid for." (Compl. ¶ 47 (emphasis added).) They further allege "[t]here were really no *competent* health people at DRA . . . ." (*Id.* ¶ 30 (emphasis added).) Thus, the fraud claims likewise relate to, or arise out of, DRA providing health care. Plaintiffs' fraud claims are predicated upon the failure to deliver a certain quality of care and are similar in nature to the breach of warranty claims expressly addressed under UHCMA. *See* Utah Code Ann. § 78B-3-403 (17).

Based on the foregoing, this Court is without subject-matter jurisdiction over Weber's and Kearns' claims because they are subject to UHCMA and Plaintiffs do not attempt to refute DRA's assertion that they have not provided the requisite notice under UHCMA. Based on this conclusion, the Court does not reach DRA's alternative argument that Plaintiffs claims are insufficiently pled.

## ORDER

Based on the foregoing, the Court **GRANTS** DRA's Motion to Dismiss. (Dkt. 2.) Plaintiffs' action is dismissed without prejudice, pending Plaintiffs' compliance with UHCMA.

Dated this 15th day of May, 2015.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge